# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

BIANCA S. HOOD,

    Plaintiff,

    v.

MATTHEW LAWRENCE, et al.

    Defendants.

5:21-CV-64

## ORDER

This civil rights action is before the Court on several Defendants' motions to dismiss. <u>See</u> Dkt. Nos. 6, 21, 23, and 25. For the reasons discussed below, Defendant Brown's motion to dismiss, dkt. no. 6, is **GRANTED**; Defendants James and Pittman's partial motions to dismiss, dkt. no. 6, are **GRANTED**; and Defendants Ansley, Morgan, and Wrobel's partial motions to dismiss, dkt. nos. 21, 23, and 25, are **GRANTED**.

## BACKGROUND

### I. Factual Background[1]

In late October 2020, Plaintiff Bianca Hood was involved in a police chase (Hood was a passenger in the pursued vehicle). Dkt.

---

[1] At this stage, the Court must "accept all factual allegations in a complaint as true[,] and take them in the light most favorable to [the] plaintiff[.]" <u>Dusek v. JPMorgan Chase & Co.</u>, 832 F.3d 1243, 1246 (11th Cir. 2016).

No. 1 ¶ 23. The chase ended when the driver of the car crashed, injuring Hood. Id. Hood was arrested at the scene. Id. This case involves Hood's requests for medical care during her time at the Ware County Jail; her sexual assault by a guard at the jail; and her belief that various officials retaliated against her for reporting the assault. See generally id.

*A. The Medical Issues*

Hood told police several times that she was injured at the scene the crash and needed medical attention. Id. ¶ 24. But the police did not take her to receive medical attention; instead, they arrested her and placed her in a holding cell. Id.

The next day, Hood was processed into the Ware County jail. Id. ¶ 25. She continued to request medical attention over the next two days, in "excruciating" pain the whole time. Id. ¶ 26.

Hood was finally examined by a nurse (who is not identified in the complaint) two days after being processed into the jail. Id. The nurse diagnosed bruised ribs, two broken toes, and a hair-line fracture in her foot. Id. Hood alleges that these injuries were serious enough that "even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting Taylor v. Hughes, 920 F.3d 729, 733 (11th Cir. 2019)). Hood also told the nurse that she suffered a head injury, but she was told by jail staff that

she would not receive medical treatment until they knew what charges would be brought against her. Id.

After her bond hearing, Hood suffered a panic attack. Id. ¶ 28. The jail staff, who allegedly knew that Hood suffered from anxiety and Post Traumatic Stress Disorder, took an electrocardiogram, gave Hood an anti-depressant, and returned her to her cell. Id.

## B.  The Sexual Assault

The complaint alleges that, at some point on the day of the bond hearing, Defendant Matthew Lawrence sexually assaulted Hood three times. Id. ¶¶ 30-34. Hood reported the assault, and the Wayne County Sheriff's office later investigated and found video evidence of the assault. Id. ¶¶ 34, 41. Lawrence was fired, arrested, and charged with aggravated sexual assault and battery. Id. ¶ 42. Hood alleges that the assault happened because of "deficient policies and customs set by Ware County Jail officials" and those officials' "fail[ure] to train the jail staff to properly supervise female inmates." Id. ¶¶ 35-36.

## C.  The Retaliation

Hood also alleges that various officials retaliated against her for reporting the assault. Id. ¶¶ 39-42. She was forced to go back to the showers without a sexual assault advocate. Id. ¶ 39. She and her cellmates (who corroborated her reports about the assault) were stripped of "jail privileges." Id. She was told by

one officer that the officer "knew" she was lying about the sexual assault because Lawrence was "out on a pizza run" and "didn't have time" to sexually assault her. Id. And when she was taken before Defendant-Judge Charles D. Brown for her bond hearing, Brown apparently told her that she "was banned from the county because of her complaint against [ ] Lawrence" and to "never set foot in Ware County again" because she had "caused trouble" for one of its officers. Id. ¶ 40.

* * *

As a result of all this, Hood "suffered humiliation, embarrassment," and physical injuries. Id. ¶¶ 43-44.

## II. Procedural Background

Hood filed this lawsuit on October 22, 2021. See generally id. In addition to Officer Lawrence and Judge Brown, Hood sued six defendants. They include:

1. Carl James, the Deputy Sheriff and supervisor at the jail. Id. ¶ 14. James was responsible for setting policy at the Ware County Jail, id.;

2. Ralph Pittman, the Jail Administrator at the Ware County Jail. Id. ¶ 15. "To the best of [Hood's] knowledge and belief," Pittman was responsible for setting and permitting policies and procedures at the Ware County Jail, id.;

3. Southern Correctional Medicine, LLC, the business contracted to provide health care services to Ware County Jail detainees. Id. ¶ 17. Hood alleges that Southern Correctional's actions were under "color of law" for these purposes, id.;

4. Dr. Peter Wrobel, the Medical Director of Southern Correctional and the Ware County Health Authority for the Ware County Jail. Id. ¶ 18. Wrobel was responsible for developing policies governing the scope of medical services and the coordination of care among health providers, id.;

5. Pam Ansley, the Chief Operating Officer of Southern Correctional. Id. ¶ 19. Ansley was responsible for providing medical care to detainees and developing the jail's operational policies and procedures, id.; and

6. Amy Morgan, the Chief Nursing Officer of Southern Correctional. Id. ¶ 20. Morgan was responsible for supervising the nurses in the Medical Unit and "administering the health system." Id.

Hood's complaint names each of these defendants in both their individual and official capacities. See id. ¶ 22.

In total, Hood asserts nine claims:

1. "Deliberate Indifference to Serious Medical Conditions" in violation of the Fourteenth Amendment, see id. ¶¶ 45-57;

2. "Failure to Protect" in violation of the Eighth Amendment, see id. ¶¶ 58-65;

3. "Failure to Train/Inadequate Training" in violation of the Fourteenth Amendment, see id. ¶¶ 66-76;

4. "Unlawful Retaliation" in violation of the First and Fourteenth Amendments, see id. ¶¶ 77-84;

5. "Failure to Intervene" under 42 U.S.C. § 1983, see id. ¶¶ 85-89;

6. Intentional Infliction of Emotional Distress under state law, id. ¶¶ 90-94;

7. Negligent Infliction of Emotional Distress under state law, id. ¶¶ 95-101;

8. Assault under state law, id. ¶¶ 102-107; and

9. Battery under state law, id. ¶¶ ¶ 108-113.

Nearly all Defendants filed motions to dismiss, dkt. nos. 6, 21, 23, 25, and then answered, dkt. nos. 4, 8, 15, 18, 20 (save Lawrence, who has not yet appeared in this litigation). The Magistrate Judge granted Defendants' motion to stay pending resolution of the motions to dismiss. Dkt. No. 31.

## LEGAL STANDARD

In order to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its

face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).
"A claim has facial plausibility" when the plaintiff "pleads
factual content that allows the court to draw [a] reasonable
inference that the defendant is liable for the misconduct alleged."
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In deciding whether a complaint states a claim for relief,
the Court must accept the facts alleged in the complaint as true
and draw all reasonable inferences in favor of the plaintiff. Ray
v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016).
But the Court should not accept allegations as true if they merely
recite the elements of the claim and declare that they are met;
legal conclusions are not entitled to a presumption of truth.
Iqbal, 556 U.S. at 678-79.

So viewed, a complaint must "contain either direct or
inferential allegations respecting all the material elements
necessary to sustain a recovery under some viable legal theory."
Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-
83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr.
for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)). Ultimately,
if "the well-pleaded facts do not permit the court to infer more
than the mere *possibility* of misconduct, the complaint has alleged—
but it has not 'show[n]'—'that the pleader is entitled to relief.'"

Iqbal, 556 U.S. at 679 (emphasis added)(quoting Fed. R. Civ. Proc. 8(a)(2)).

**DISCUSSION**

In the interest of efficiency, the Court takes up Defendants' motions to dismiss together. For the reasons discussed below, those motions are resolved as follows:

- Hood's claims against Judge Brown are **DISMISSED;**

- Hood's official capacity claims against James and Pittman are **DISMISSED;**

- Hood's deliberate indifference claim under Count One is **DISMISSED** as to Ansley, Morgan, and Wrobel, and Hood is **ORDERED** to perfect service on those defendants within thirty days.

**I. Judge Brown's Motion to Dismiss**

Hood's claims against Judge Brown stem from her appearance in his Court for bond proceedings. See Dkt. No. 1 ¶ 40. She asserts claims against him for retaliation, failure to intervene in the violation of her rights, intentional infliction of emotional distress, and negligent infliction of emotional distress. Id. ¶¶ 78, 86, 91, 96.

Those claims are plainly barred by judicial immunity. Even if they were not, the official capacity claims against Brown would be barred by the Eleventh Amendment.

A. *Hood's claims against Judge Brown are barred by Judicial Immunity.*

Under both state and federal law, judges enjoy complete immunity from lawsuits regarding their duties. See <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985); <u>Sibley v. Lando</u>, 437 F.3d 1067, 1070 (11th Cir. 2005); <u>Withers v. Schroeder</u>, 819 S.E.2d 49, 52 (Ga. 2018). The reason for this immunity is easy to understand: "it safeguards the [judicial] process because, without it, losing litigants would be 'apt to complain of the judgment against them' and 'ascribe improper motives to the judge.'" <u>Smith v. Scalia</u>, 44 F. Supp. 3d 28, 41 (D.D.C. 2014) (quoting <u>Bradley v. Fisher</u>, 80 U.S. 335, 348-49 (1871)) (alterations accepted). The judicial system simply could not function if every judge—including judges reviewing the decisions of other judges—had to risk "being haled into court by the losing party in every decision he rendered[.]" <u>Id.</u> (quoting <u>Caldwell v. Kagan</u>, 865 F. Supp. 2d 35, 43 (D.D.C. 2012)). In the end, the remedy for a wrongful judicial decision is an appeal—not a lawsuit. <u>Smith</u>, 44 F. Supp. 3d at 42 (citing <u>Howard v. U.S. Dist. Ct. ex rel. District of Columbia</u>, 468 F. App'x 12, 12 (D.C. Cir. 2012)); <u>cf.</u> <u>Gotbetter v. Wendt</u>, 371 F. App'x 165, 167 (2d Cir. 2010).

Judicial immunity can be overcome only by a showing that the judge either (1) did not act in his judicial capacity, or (2) acted in the clear absence of all jurisdiction. <u>Mireles v. Waco</u>, 502

U.S. 9, 11 (1991) ("[J]udicial immunity is not overcome by allegations of bad faith or malice"); Cf. Withers, 819 S.E.2d at 52 (similar); see also Pierson v. Ray, 386 U.S. 547, 554 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly."). On the first requirement, "whether an act by a judge is a 'judicial' one relates to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Id. (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)) (alteration accepted). And on the second, "a judge does not act in the 'clear absence of all jurisdiction when [he] acts erroneously, maliciously, or in excess of [his] authority, but rather when [he] acts entirely without subject matter jurisdiction." Cox v. Mills, 465 F. App'x 885, 887 (11th Cir. 2012) (quoting Dykes v. Hosemann, 776 F.2d 942, 947-48 (11th Cir. 1985)). Hood's suit does not plausibly track either route around immunity.

First, Hood herself makes clear that she appeared before Brown as part of a normal judicial function (here, a bond hearing). On the complaint's own terms, Brown "[was] responsible for presiding over [Hood's] criminal bond hearing" and, in that capacity, "imposed a retaliatory ban from the County as a condition of [Hood's] bond and as a result of [Hood's] sexual assault outcry[.]"

Dkt. No. 1 ¶ 16; see also id. ¶¶ 40, 83. Presiding over a bond hearing is plainly the sort of function "normally performed by a judge," so it follows that Hood dealt with Brown "in his judicial capacity." Mireles, 502 U.S. at 11.

Second, Hood's argument that "banishing" her was an act "in the clear absence of all jurisdiction" is semantic, not substantive. Hood does not (and cannot) dispute that Georgia magistrate courts have jurisdiction over bond proceedings. See O.C.G.A. § 15-10-2(a)(9) ("Each magistrate court and each magistrate thereof shall have jurisdiction and power over . . . [t]he granting of bail in all cases where the granting of bail is not exclusively committed to some other court or officer[.]"). Hood instead complains that "it is beyond any measure of the Judge's jurisdiction to purport to banish an individual from an entire county simply because . . . the individual has 'caused trouble' for a detention officer[.]" Dkt. No. 16 at 12. But that reasoning just substitutes "jurisdiction" for "authority"—which is not the same thing. If Judge Brown indeed "banished" Hood from the County—and the Court assumes for the purpose of this motion that he did—that would certainly seem to be outside his authority (at a minimum, Brown has not cited any authority giving him that power). But that does not mean he acted in the absence of *all* jurisdiction. Courts widely agree that "[a] judge acts in the clear

absence of all jurisdiction if the *matter* upon which he acts"—as opposed to the particular order he gives—is "clearly outside of the subject matter jurisdiction of the court[.]" King v. Love, 766 F.2d 962, 965 (6th Cir. 1985) (emphasis added); cf. Holloway v. Walker, 765 F.2d 517, 523 (5th Cir. 1985) ("Where a judge does not clearly lack all subject-matter jurisdiction, he does not clearly lack *all* jurisdiction.") (emphasis in original); Adams v. McIlhany, 764 F.2d 294, 298 (5th Cir. 1985) ("Where a court has *some* subject-matter jurisdiction, there is sufficient jurisdiction for immunity purposes.")(emphasis added). Thus, even if Judge Brown lacked authority to "banish" Hood from the County as a condition of her bond, he did not act "in the clear absence of all jurisdiction." Dykes, 776 F.2d at 946-47.

Thus, Brown's alleged actions here are neither "non-judicial" nor "in the clear absence of all jurisdiction," so he is entitled to judicial immunity.

*B. Hood's official capacity claims against Judge Brown would also be barred by the Eleventh Amendment.*

Brown is also correct to say that Hood's official capacity claims against him are not authorized by § 1983. See Dkt. No. 6 at 6 n.3. "In order to succeed on a § 1983 claim, 'a plaintiff must show that he or she was deprived of a federal right *by a person* acting under color of state law.'" Taylor v. Dept. of Public

_Safety_, 142 F. App'x 373, 374 (11th Cir. 2005) (quoting _Griffin v. City of Opa-Locka_, 261 F.3d 1295, 1303 (11th Cir. 2001)) (emphasis in original). But it is well established that a suit against a government official in his official individual capacity is essentially a suit against the governmental entity itself. _See Busby v. City of Orlando_, 931 F.2d 764, 776 (11th Cir. 1991); _Salvato v. Miley_, 790 F.3d 1286, 1295 (11th Cir. 2015). The one exception to that rule is an official capacity suit for prospective, injunctive relief, _see Kentucky v. Graham_, 473 U.S. 159, 167 n.14 (1985), and Hood does not request any such relief here, _see_ dkt. no. 1 at 45-46 (prayer for relief).

In this case, that means that Hood's official-capacity claims against Judge Brown are effectively claims against the State of Georgia itself. _Watts v. Bibb Cty., Ga._, No. 5:08-CV-413(CAR), 2010 WL 3937397, at *12 (M.D. Ga. Sept. 30, 2010); _cf. Holt v. Floyd Cty., Ga._, No. 4:18-cv-112, 2018 WL 8966814, at *12 (N.D. Ga. Aug. 17, 2018) (because "the Georgia Constitution created the magistrate courts as a part of Georgia's judicial branch . . . . magistrate judges [ ] are arms of the State"). And it is well-established that the State of Georgia is not a "person" within the meaning of 42 U.S.C. § 1983. _Taylor_, 142 F. App'x at 374 (citing _Will v. Mich. Dept. of State Police_, 491 U.S. 58, 67 (1989)). As the Supreme Court put it in _Will_, "Section 1983 provides a federal

13

forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against *a State* . . . . The Eleventh Amendment bars such suits unless the State has waived its immunity[.]" 491 U.S. at 66 (emphasis added). Thus, Brown would also be entitled to Eleventh Amendment Immunity from Hood's official capacity claims against him.

For these reasons, Brown's motion to dismiss, dkt. no. 6 at 4-6, is **GRANTED**, and all claims against him are **DISMISSED**.

## II. James and Pittman's Motions to Dismiss

Hood presses essentially all her claims against Sheriff James and Jail Administrator Pittman. See generally Dkt. No. 1. Both Defendants moved to dismiss in part, arguing that Hood's claims against them in their official capacities were barred by Eleventh Amendment immunity (for the federal law claims) and sovereign immunity (for the state law claims). Dkt. No. 6 at 7-11, 11-14; see also id. at 1 n.1. As discussed below, James and Pittman are correct.

A. *Hood's official-capacity federal claims against James and Pittman are barred by the Eleventh Amendment.*

The Eleventh Amendment bars lawsuits by private citizens against states in federal court. Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc). This immunity protects not just the state itself, and not just state officers and officials, but

also any person "acting as an 'arm of the State'[—]which includes agents and instrumentalities of the State." Id. at 1308 (quoting Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429-30 (1997)). To that end, the Eleventh Circuit has held that a Sheriff "functions as an arm of the State—not of [a] County—when promulgating policies and procedures governing [the] conditions of confinement" in county jails. Purcell ex rel. Estate of Morgan v. Toombs Cty., 400 F.3d 1313, 1325 (11th Cir. 2005). For a time, district courts in the Eleventh Circuit agreed that a sheriff *does not* act as an arm of the state when providing medical care for inmates in the county jail. See, e.g., Lewis v. Whisenant, No. 5:15-CV-77, 2016 WL 4223721, at *5 (S.D. Ga. Aug. 9, 2016) (collecting cases). But in late 2016, the Eleventh Circuit held that sheriffs *are* "arms of the state" in providing food to inmates, analogizing that function to the provision of medical services—which, the court suggested, was also a state function. Lake v. Skelton, 840 F.3d 1334, 1340-41 (11th Cir. 2016). Since then, district courts have (apparently unanimously) followed Lake's reasoning and concluded that a sheriff is an arm of the state (along with his deputies) when providing medical services to inmates.[2]

---

[2] See, e.g., Palmer v. Correct Care Sols., LLC, 291 F. Supp. 3d 1357, 1366 (M.D. Ga. 2017) ("[T]he Eleventh Circuit's decision in Lake I requires the Court to conclude, for purposes of Eleventh Amendment

Hood resists that conclusion, but her arguments essentially restate the ones the Eleventh Circuit considered and rejected in Lake. Compare Dkt. No. 16 at 13-15 with 840 F.3d at 1345-47 (Parker, J., dissenting).

First, Hood points out that sheriffs are attached to their respective counties in several respects: they are elected by the voters of their county, the Georgia Constitution discusses them under provisions dealing with counties and municipal corporations, and (by statute) they are "jailers of the counties." Dkt. No. 16 at 13-14 (citing GA. Const. art. IX § 1, ¶ 3 and O.C.G.A. 42-4-1(a)). But as Hood herself recognizes, the Eleventh Circuit rejected those arguments in Manders, reasoning that this sort of "nomenclature" simply reflects the "geographic territory in which a sheriff . . . mainly operates," and does not change the fact

---

immunity, that Sheriff Darr and Commander Collins acted as arms of the State in providing medical care to Muscogee County jail detainees."); Brooks v. Wilkinson Cty., Ga., 393 F. Supp. 3d 1147, 1160 (M.D. Ga. 2019) ("[B]ecause the provision of medical care cannot be distinguished from the provision of food for Eleventh Amendment purposes, Lake [ ] requires a finding of immunity in this case."); Estate of May by and through Myrick v. Fulton Cty., No. 1-19-CV-2440, 2020 WL 5541086, at *5 (N.D. Ga. Aug. 13, 2020) (adopting Palmer's reasoning); McRae v. Telfair Cty., CV 318-077, 2020 WL 5608637, at *6 (S.D. Ga. Sep. 18, 2020) ("This Court . . . finds Palmer and Brooks persuasive."); Bivens v. Coffee Cty., No. 5:21-CV-14, 2021 WL 3173598, at *4-5 (S.D. Ga. July 26, 2021) ("The Court is similarly persuaded that it can find no distinction for Eleventh Amendment purposes between a county sheriff feeding county detainees in a county jail and a county sheriff taking care of the medical needs of those same county detainees in that same county jail." (quotation omitted) (collecting cases)); Iraheta v. Houston Cty., No. 5:21-CV-104, 2022 WL 209273, at *4 (M.D. Ga. Jan. 24, 2022) (similar).

that they exercise the state's law enforcement powers and "perform specific statutory duties[ ] directly assigned by the State[.]" Dkt. No. 16 at 13-14 (Manders, 338 F.3d at 1312).

Next, Hood cites two Georgia cases explaining that official capacity actions against a sheriff are suits "against the County," not the State. Dkt. No. 16 at 14 (citing Davis v. Morrison, 810 S.E.2d 649, 651 (Ga. Ct. App. 2018) and Gilbert v. Richardson, 452 S.E.2d 476, 478 n.4 (Ga. 1994)). That is certainly true, but not in the way Hood suggests. Davis indeed confirmed the "well established" principle that a "[suit] against a sheriff in his official capacity is considered a suit against the county," but the *upshot* of that principle is that "the sheriff is entitled to assert any defense or immunity that the county could assert, including sovereign immunity." 810 S.E.2d at 651. That sovereign immunity *comes from*—indeed, is wholly derived from—the County's relationship with the State. Gilbert, 452 S.E.2d at 478-79 (explaining that counties are covered by the Georgia Constitution's reference to departments and agencies of the state). So in Davis, for example, the sheriff was entitled to raise sovereign immunity as a defense, subject to a state statute waiving immunity when local governmental entities bought liability insurance against the negligent use of government vehicles. 810 S.E. 2d at 651-52. There, the statutory term "local government

17

entity" included the sheriff's office, even though it was legally "separate from [the] county itself" because it "clearly perform[ed] governmental services," namely, exercising the law enforcement powers of the state, "on a local level." Id. at 652 (internal quotation marks omitted). Simply put, Georgia courts' treatment of official capacity suits against sheriffs underscores—not undermines—the sheriff's status as an "arm of the state" for most purposes.

Finally, Hood contends that (despite Manders and Lake) recent cases like Taylor v. Hughes, 920 F.3d 729 (11th Cir. 2019), show that sheriffs *can* be liable for deliberate indifference. Dkt. No. 16 at 15-16. Again: that is true, but it does not mean what Hood says it means. Taylor was an *individual* capacity suit, 920 F.3d at 729, and it is black letter law that "the Eleventh Amendment does not protect state employees sued in their individual capacity," Jackson v. Georgia Department of Transportation, 16 F.3d 1573, 1575 (11th Cir. 1994).[3] Indeed, that is why Hood's individual capacity claims against James and Pittman would not be barred by the Eleventh Amendment. Taylor, and cases like it, simply address a different set of issues.

---

[3] For the same reason, Hood's discussion of qualified immunity is irrelevant at this stage. Dkt. No. 6 at 16-17; see also Dkt. No. 6 at 1 (explaining that while Judge Brown seeks complete dismissal of the claims against him, Pittman and Brown move to dismiss only the "official capacity" claims against them).

Thus, Hood's official capacity claims against James and Pittman are barred by Eleventh Amendment immunity. Those claims are therefore **DISMISSED**.

*B. Hood's official-capacity state law claims against James and Pittman are barred by sovereign immunity.*

Because a suit against a government official in his official capacity is really a suit against the entity he works for, Kentucky v. Graham, 473 U.S. 159, 159 (1985), state law claims against James and Pittman in their official capacities are barred to the same extent that a suit against the County itself would be barred. Gilbert, 452 S.E.2d at 476. Absent a waiver, therefore, Hood's claims are barred. Howard v. City of Columbus, 521 S.E.2d 51, 65 (Ga. Ct. App. 1999) ("[T]he county sheriff in his official capacity is immune from tort liability in performing an official function and may be liable only to the extent that the county ha[s] waived [its] immunity[.]"); see also Woodard v. Laurens Cty., 456 S.E.2d 581, 582 (1995) (explaining that the Georgia Tort Claims Act expressly exempts counties from its general waiver of sovereign immunity). Hood does not point to any such waiver, so her official-capacity state-law claims against James and Pittman are **DISMISSED** as well.[4]  James and Pittman's partial motions to dismiss, dkt. no. 6, are therefore **GRANTED**.

---

[4] Though the parties do not address it, the Court pauses to note that Hood's claims here also do not fall within the newly minted immunity

## III. Ansley, Morgan, and Wrobel's Motions to Dismiss

Hood alleges that Ansley, Morgan, and Wrobel ("the Medical Defendants") violated the Fourteenth Amendment by ignoring her serious medical needs and failing to develop and institute proper policies for the care of inmates at the Ware County jail, and that they intentionally inflicted emotional distress upon her. See Dkt. No. 1 ¶¶ 46, 67, 86, 91.

The Medical Defendants raise two issues in their motions to dismiss, and both have merit. First, Ansley and Morgan contend they were not properly served. Dkt. Nos. 21, 25 at 6-8. And second, all three Medical Defendants argue that Hood's deliberate indifference claims (Count One) are too conclusory and vague to state a claim for relief. Dkt. Nos. 21, 23, 25 at 4-6. Hood's counterarguments are unpersuasive. Hood must therefore perfect service on Ansley and Morgan to proceed against them, and her Count One deliberate indifference claim against the Medical Defendants is **DISMISSED**.

---

waiver in Article 1, Section 2, Paragraph V of the Georgia Constitution. Paragraph V allows a plaintiff to seek declaratory (and, if he gets it, injunctive) relief to prevent a violation "of the laws or the Constitution of [Georgia] or the Constitution of the United States." Id. at (b)(1). But this waiver is not open ended. Instead, the "waiver of sovereign immunity under this Paragraph shall apply to past, current, and prospective acts which occur on or after January 1, 2021." Id. The alleged wrongs here all took place in late October 2020—before, and therefore outside, the Paragraph V waiver. See Dkt. No. 1 ¶¶ 16, 23, 25, 26, 27, 30, 40, 56.

A. *Hood did not properly serve Ansley or Morgan.*

"Under Rule 4, a plaintiff must serve the summons and the complaint to each defendant within 90 days after the complaint is filed." Phillips v. Life Property Mgmt. Svcs., No. 21-11350, 2021 WL 5444921, at *1 (11th Cir. Nov. 21, 2021) (citing Fed. R. Civ. P. 4(c), 4(m)). If the plaintiff fails to serve the defendant in that time, "the court . . . must dismiss the action without prejudice . . . or order that service be made within a specified time." Id. (quoting Fed. R. Civ. P. 4(m)).

Ansley and Morgan contend that Hood's claims against them should be dismissed because they were not properly served. Dkt. No. 21 at 6-8; Dkt. No. 25 at 7. They both point out that by the time Hood's process server left their summonses at Southern Correctional Medicine, neither of them worked there anymore. Dkt. No. 21 at 7 (citing Dkt. No. 21-1 (Ansley, October 29, 2021)); Dkt. No. 25 at 7 (citing Dkt. Nos. 21-1 and 21-2 (Morgan, November 30, 2021)).

Hood—puzzlingly—does not dispute that service was improper or even pledge to perfect service. Dkt. No. 17 at 9; Dkt. No. 28 at 12-13. Instead, she chooses (1) to complain that Ansley's contention is not supported by an affidavit, dkt. no. 17 at 8, and (2) to point out that the ninety-day period under Rule 4 had not

run (as of the time she responded to Ansley and Morgan's motions). Dkt. Nos. 17 at 8, 25 at 7.

Neither of those arguments is impressive. First, the plaintiff always bears the burden of proving valid service or good cause for the failure to properly serve. Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1297 (N.D. Ga. 2009) (citing Sys. Signs Supplies v. U.S. Dep't of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990)). Second, the ninety-day time limit may not have run as of the time Hood filed her response briefs, but (predictably) it has long since run as of the date of this Order. See Dkt. No. 1 (filed October 22, 2021).

Rule 4(m), therefore, gives this Court discretion to dismiss Hood's claims against Ansley and Morgan; but the Court also has discretion to extend the time to serve, even without a showing of good cause. Horenkamp v. Van Winkle & Co., 402 F.3d 1129, 1131-32 (11th Cir. 2005). Since there has not been any delay or prejudice, dismissal seems inappropriate at this point. The Court therefore declines to dismiss Hood's claims against Ansley and Morgan but **ORDERS** Hood to perfect service on them within **thirty (30) days** of this Order. Hood's failure to do so (or to demonstrate good cause for any failure to do so) will result in dismissal of her claims against Ansley and Morgan.

### B. Hood's deliberate indifference claim relies entirely on conclusory allegations.[5]

"A pretrial detainee's claim of deliberate indifference to a serious medical need falls under the Fourteenth Amendment's Due Process Clause." Watkins v. Pinnock, 802 F. App'x 450, 454 (11th Cir. 2020) (citing Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306 (11th Cir. 2009) (explaining that Fourteenth Amendment deliberate indifference claims "are subject to the same scrutiny as if they had been brought as deliberate indifference claims under the Eighth Amendment")). To prevail on a claim that officials showed deliberate indifference to a serious medical need, a plaintiff must show "(1) a serious medical need; (2) the [officials'] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Id. (alterations accepted) (quoting Mann, 588 F.3d at 1306–07). The Medical

---

[5] The Court makes two related notes on the scope of Hood's claims and the Medical Defendants' arguments.

First, Hood appears to split her deliberate indifference claim into multiple counts, with most alleging different types of first-hand wrongdoing (Counts One, Two, and Five), and another alleging failures to develop and implement proper policies (Count Three).

Second, while the medical defendants seem to style their 12(b)(6) arguments as addressing *all* of Hood's claims against them (namely Counts One, Three, Five, and Six), dkt nos. 21, 23, and 25 at 4, they make only passing reference to Count Three, see id. at 5, and they do not mention Counts Five or Six at all. See id. at 5-6. As a result, the Medical Defendants never explain why those claims must be dismissed. The Court therefore treats their arguments under 12(b)(6) as a motion to dismiss Count One, only.

Defendants challenge the second prong of that test.[6] Dkt. Nos. 21, 23, 25 at 4-6. In particular, they argue that Hood has not plausibly alleged deliberate indifference because she has not argued that any of them "had knowledge that she sought medical attention and . . . failed to provide medical treatment." Id. The Court agrees.

"[T]o prove that a[n official] acted with deliberate indifference, [a plaintiff] must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than mere negligence" or a "mistake in judgment." Id. at 455 (citing Mann, 588 F.3d at 1307-08).

---

[6] Ansley also contends, with some reason, that Hood's response concedes that her complaint fails to state a claim under Rule 12(b)(6). Dkt. No. 28 at 2-3 (discussing Hood's response brief, dkt. no. 17 at 5-7). To give a few examples, Hood's brief seems to agree that "[t]he allegations in Plaintiff's Complaint constitute a lack of facial plausibility"; "Plaintiff has failed to state a claim"; "conclusory [allegations] do[ ] not substantiate any deliberate indifference attributable to Defendant Ansley"; "[t]hese allegations appear to be Plaintiff's muddled attempt to raise training allegations against Defendant Ansley"; and, finally, that "Plaintiff[ ] would not be entitled to relief from Defendant Ansley under any state of provable facts." Dkt. No. 17 at 5-7.

Hood defends these puzzling admissions as "the result of a scrivener's error of misplaced or omitted negative modifiers," Dkt. No. 30 at 2—but even a cursory inspection of the briefs makes clear that large swaths of Hood's briefing are copied-and-pasted from her adversaries' briefs. Compare, e.g., Dkt. No. 21 at 4-6 with Dkt. No. 17 at 4-6.

That is certainly not a commendable practice. Even so, it seems clear that neither Hood nor her counsel actually meant to concede away the case, so the Court declines to read Hood's response briefs that way.

But Hood never alleges *facts* showing that any of the Medical Defendants had subjective knowledge of her need for medical care. She never alleges, for example, that she had contact with any of these officials—let alone that she discussed her injuries with them or asked them directly for help. See Dkt. No. 1 ¶¶ 23-44 (failing to mention Ansley, Morgan, or Wrobel in the narrative section of the complaint). At best, she alleges that she was "under [their] custody and control[.]" Id. ¶ 47. The only allegations that even *imply* subjective knowledge are obvious boilerplate. See Dkt. No. 1 ¶ 48 (alleging that the Medical Defendants "intentionally and negligently denied Ms. Hood necessary medical care" in some unspecified way); id. ¶ 49 (alleging, again without any context, that the Medical Defendants had "objective and subjective awareness of [Hood's] injuries"); id. ¶ 54 ("[d]efendants knew that Ms. Hood had urgent medical needs that would be exacerbated by delay because she consistently requested medical assistance" to unspecified persons). Without supporting factual allegations, these assertions "merely recite [an] element[ ] of the claim[,] and declare that [it is] met"—so the Court is bound to reject them as mere "legal conclusions." Iqbal, 556 U.S. at 678-79; cf. Magwood v. Sec'y, Fla. Dept. of Corr., 652 F. App'x 841, 845 (11th Cir. 2016) (affirming the dismissal of deliberate indifference claims where the plaintiff "did not allege

that any of these defendants were directly involved in his medical care").

Indeed, Hood mainly alleges that the Medical Defendants' wrongdoing stemmed from their supervisory roles, rather than any direct involvement in this case. See Dkt. No. 1 ¶¶ 18-20 (referring to the Medical Defendants' responsibility for developing policies and procedures governing the provision of medical services in the Ware County Jail); id. ¶ 47 (alleging Hood was "under the custody and control of . . . various *employees* of the Medical Defendants") (emphasis added); id. ¶ 49 ("the medical defendants *and staff* . . . denied Ms. Hood medical treatment") (emphasis added). But "'[s]upervisory officials are not liable under section 1983 on the basis of *respondeat superior* or vicarious liability.'" Magwood, 652 F. App'x at 844 (italics in original) (quoting Belcher v. City of Foley, Ala., 30 F.3d 1390, 1396 (11th Cir. 1994)). Supervisors that do not participate in events themselves are liable only "if there is a causal connection between [some] action of the [ ] official and the alleged constitutional deprivation." Id. (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

The Medical Defendants' supervisory authority may bear on their potential liability for Hood's other claims, but for purposes of Count One, Hood has not alleged subjective knowledge of her

medical needs. Her deliberate indifference claim against the Medical Defendants under Count One is therefore **DISMISSED.**

## CONCLUSION

Brown's motion to dismiss, dkt. no. 6, is **GRANTED**, and all claims against him are **DISMISSED.** James and Pittman's partial motions to dismiss, dkt. no. 6, are **GRANTED**, and Hood's official capacity claims against them are **DISMISSED.** Ansley, Morgan, and Wrobel's partial motions to dismiss, dkt. nos. 21, 23, and 25, are **GRANTED**, and Hood's deliberate indifference claim under Count One is **DISMISSED.** Finally, to proceed against Ansley and Morgan, Hood must perfect service upon them within **thirty (30) days** of the date of this Order.[7]

---

[7] For reference, this means the remaining claims in the case are as follows:

- Count One, as to Defendant Southern Correctional Medicine ("SCM") and Defendants James and Pittman in their individual capacities;
- Count Two, as to Defendant Lawrence, and Defendants James and Pittman in their individual capacities;
- Count Three, as to Defendants Lawrence, SCM, Wrobel, Ansley, and Morgan, and Defendants James and Pittman in their individual capacities;
- Count Four, as to Defendants James and Pittman in their individual capacities;
- Count Five, as Defendants Lawrence, SCM, Wrobel, Ansley, and Morgan, and Defendants James and Pittman in their individual capacities;
- Count Six, as Defendants Lawrence, SCM, Wrobel, Ansley, and Morgan, and Defendants James and Pittman in their individual capacities;
- Count Seven, as to Defendants James and Pittman in their individual capacities;
- Count Eight, as to Defendant Lawnrence, and Defendant James in his individual capacity;
- Count Nine, as to Defendant Lawrence, and Defendant James in his individual capacity.

**SO ORDERED** this 25th day of March, 2022.

_____

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA